IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Emilio Bautista-Serrano, ) | |
| ) | Civil Action No. 6:11-2870-RBH-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Mr. Clark, Counselor, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the defendant's motion to dismiss or, in the alternative, for summary judgment and the defendant's motion to strike the plaintiff's response in opposition to the dispositive motion.

The plaintiff, a federal inmate who is proceeding *pro se*, seeks relief pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) DSC, all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

On February 16, 2012, the defendant filed a motion to dismiss or, in the alternative, for summary judgment.[2] By order filed on February 17, 2012, pursuant to

---

[1]In *Bivens*, the Supreme Court established a cause of action against federal officials for the violation of federal constitutional rights. A *Bivens* claim is analogous to a claim under 42 U.S.C. § 1983. *Harlow v. Fitzgerald*, 457 U.S. 800, 814–20 (1982). Case law involving § 1983 claims is applicable in *Bivens* actions and vice versa. *Id*. *See also Osabutey v. Welch*, 857 F.2d 220, 221–223 (4th Cir.1988).

[2]The complaint was originally brought against defendants Mr. Clark and Kenney Atkins, Warden (this defendant's correct name is Kenny Atkinson). Both defendants filed the motion to dismiss at issue here. On March 13, 2012, the plaintiff moved to amend his complaint from a § 1983 action to a *Bivens* action. He also requested dismissal of defendant Atkinson and sought to clarify that the action was against defendant Clark in both his individual and official capacities. The Honorable R. Bryan Harwell, United States District Judge, granted that motion on May 23, 2012. Accordingly, the only remaining defendant is Mr. Clark.

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion to dismiss/summary judgment procedures and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his opposition to the motion on March 13, 2012. On March 20, 2012, the defendant filed a motion to strike the plaintiff's opposition. On that same date, the defendant filed a reply to the plaintiff's response in opposition to the motion to dismiss. The plaintiff filed his opposition to the motion to strike on April 2, 2012. On April 5, 2012, the plaintiff filed a motion to amend his response in opposition to the motion to dismiss. This court granted that motion on May 23, 2012, and noted that the amendments and corrections would be considered along with the plaintiff's original response in addressing the defendant's motion to dismiss.

## **FACTS PRESENTED**

The plaintiff is currently incarcerated at Federal Correctional Institution ("FCI") Edgefield serving a 120-month term imposed by the United States District Court for the Western District of Texas for conspiracy to possess with intent to distribute cocaine. He was sentenced on October 16, 2009, and his projected release date is December 22, 2017, with credit for good conduct time (Roy Lathrop decl. ¶ 4).

The defendant, John Clark, is a Correctional Counselor at FCI Edgefield. The plaintiff specifically claims he was discriminated against because he is Mexican. He claims he was the only prisoner placed in administrative detention as a result of a disturbance that occurred at Edgefield on November 1, 2010. The plaintiff claims he was denied due process because he was not permitted to see the evidence used to charge him, the incident report was written 45 days after the incident, and he was not served with a copy of the incident report in a timely manner. The plaintiff claims he was subjected to cruel and unusual punishment because he was placed in administrative detention for a prohibited act that could not be proven he committed and because he is Mexican. As relief, the plaintiff asks the court to award him a total of $250,000 in compensatory damages, $600 in punitive

2

damages, costs of bringing this suit, and any additional relief the court deems just, proper, and equitable (comp. 6-9). The defendant argues that the plaintiff has not exhausted his administrative remedies, the court lacks subject matter jurisdiction over him in his official capacity, he is entitled to qualified immunity, and the plaintiff has failed to state a claim of a constitutional violation.

According to the affidavits submitted by the defendant in support of his motion, on November 1, 2010, a large scale disturbance occurred in the FCI Edgefield A-3 housing unit involving multiple Black and Hispanic inmates (Enrique Santiago decl. ¶ 2). After the disturbance was quelled by staff, the entire housing unit was locked down, and the FCI Edgefield Special Investigative Supervisor ("SIS"), Enrique Santiago, commenced an investigation into who was involved and what caused the disturbance (*id.*). Over the course of the first several days of the investigation, the SIS and several other FCI Edgefield staff members conducted mass interviews of the A-3 inmate population (*id.* ¶ 3). On November 5, 2010, as a result of information received during the mass interviews, the SIS ordered 11 inmates (Black and Hispanic) be placed in administrative detention (*id.*). One of the inmates the SIS ordered placed into administrative detention on November 5, 2010, was the plaintiff (*id.*). The SIS decided to have these inmates placed in administrative detention separate from the general population in order to gather additional information into the events of November 1, 2010 (*id.*).

The SIS enlisted the aid of several FCI Edgefield staff members to review video footage of the November 1, 2010, incident in an effort to identify inmates who were involved in the disturbance (*id.* ¶ 4). One such staff member that assisted in reviewing the video footage was the defendant (*id.*; John Clark decl. ¶ 4). Defendant Clark was asked to review the video footage because he had been assigned to the A-3 housing unit and was familiar with the inmates assigned to that unit. The staff that reviewed the video footage were able to positively identify 51 inmates that were key participants in the disturbance

3

(Sanitago decl. ¶ 4). During his review of the video footage, defendant Clark was able to identify several inmates who were involved in the disturbance, one of which was the plaintiff (Clark decl. ¶ 4). Defendant Clark observed the plaintiff grab a chair and strike an unknown Black inmate from behind as the Black inmate tried to run away, then strike another unknown Black inmate from behind with a closed fist, and then grab three more chairs and throw them toward a group of Black inmates cornered in the housing unit. As responding staff arrived, defendant Clark observed the plaintiff retreat into his assigned cell. On December 17, 2010, based upon his review of the video footage, defendant Clark prepared an incident report charging the plaintiff with the BOP prohibited act of Minor Assault (code 224) (*id.*). Defendant Clark testified he has never had favorable or unfavorable dealings with the plaintiff and never displayed any dislike toward him (*id.* ¶ 7).

A copy of the incident report was delivered to the plaintiff on December 20, 2010 (comp. at 4). A Lieutenant then conducted an investigation (Sandra Lathrop decl. ¶ 8). After the investigation, the matter was referred to the Unit Discipline Committee ("UDC") for further proceedings (*id.*). The UDC held a hearing on January 20, 2011 (*id.* ¶ 9). Given the serious nature of the charges, the matter was referred to the Discipline Hearing Officer ("DHO") for disposition. The UDC advised the plaintiff of his rights before the DHO and offered him the opportunity to request witnesses and the services of a staff representative (*id.*). On March 10, 2011, the DHO convened the discipline hearing (*id.* ¶ 10). After consideration of all the evidence before her, the DHO determined the evidence did not support the charge and expunged the incident report. While the incident report adequately described in detail the actions taken by the plaintiff, the report did not adequately identify the persons the plaintiff had assaulted (*id.*). At the conclusion of the disciplinary process, the inmates who were identified as key participants were either transferred to other institutions or, after having been cleared as no longer posing a threat to the safe and orderly

4

operation of the institution, were returned to the FCI Edgefield general population (Santiago decl. ¶ 6).

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56[3] states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of

---

[3]Because both the defendant and the plaintiff have submitted documents outside the pleadings for review in connection with this motion, the court will treat it as one for summary judgment.

5

the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

***Subject Matter Jurisdiction***

The plaintiff brings this action under *Bivens*. Initially, the court notes that *Bivens* claims are not actionable against the United Sates, federal agencies, or public officials acting in their official capacities. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Accordingly, the plaintiff's *Bivens* action cannot lie against the defendant in his official capacity. *See Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (*Bivens* action does not lie against either agencies or officials in their official capacity). As such, the plaintiff's *Bivens* claims against the defendant in his official capacity should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

***Failure to Exhaust***

The defendant argues that the complaint should be dismissed because the plaintiff has failed to exhaust his administrative remedies. This court agrees. The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that prisoners exhaust their administrative remedies prior to filing civil actions concerning prison conditions. *See Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Exhaustion is required for "all action[s] ... brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations omitted). "[T]he PLRA's exhaustion requirement is mandatory," *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and "applies

to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532. Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216; *Anderson*, 407 F.3d at 681. No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being hauled into court." *Id.* at 204. It also has the "potential to reduce the number of inmate suits and to improve the quality of suits that are filed by producing a useful administrative record.*"* *Id.*

The PLRA requires "proper exhaustion" of available administrative remedies prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). As the Supreme Court noted, "[a]ggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons," whether it be concerns about efficiency or "bad faith." *Id.* at 89-90. This is especially true in a prison context. *Id*. at 90 n.1. Nevertheless, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

The Bureau of Prisons ("BOP") has a three-tiered formal administrative grievance process, although there is also an informal resolution process. *See* 28 C.F.R. §§ 542.10 *et seq*. An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. *Id.* § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden within 20 calendar days after the date upon which the basis for the request occurred. *Id.* § 542.14. The matter will be investigated, and a written response provided to the inmate. *Id.* If dissatisfied with the response, the inmate may appeal to the Regional Director within 20

days of the date of the Warden's response. *Id.* § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the General Counsel within 30 days of the Regional Director's response. *Id.* Appeal to the General Counsel is the final level of agency review. *Id.*

The defendant submitted the declaration of Roy Lathrop, a Paralegal Specialist for the United States Department of Justice, BOP, South Carolina Consolidated Legal Center, located at FCI Edgefield, in support of the motion for summary judgment. According to Mr. Lathrop's review of the BOP database known as SENTRY, on April 8, 2011, the plaintiff submitted a Request for Administrative Remedy form (BP-9) to the FCI Edgefield Warden's Office in which he alleged staff misconduct in writing a false incident report (Roy Lathrop decl. ¶ 7, attach. B, Remedy ID: 634301-F1). On this same day, without being filed, the plaintiff's BP-9 was returned to him. It was explained to the plaintiff that he needed to provide more specific information in his request so that it could be considered because the attempt at informal resolution he submitted with his BP-9 contained conflicting and different issues (pl. resp. m.s.j., ex. 0005).

On April 28, 2011, the plaintiff submitted another Request for Administrative Remedy form (BP-9) to the FCI Edgefield Warden's Office re-alleging staff misconduct in writing a false incident report (Roy Lathrop decl. ¶ 8, attach. B, Remedy ID: 637135-F1). Although the plaintiff had clarified his request as instructed, he now failed to provide a copy of the proper attempt at informal resolution to his request. The BP-9 was rejected with instruction to re-file and include a copy of the proper attempt at informal resolution (pl. resp. m.s.j., ex. 0008).

On May 20, 2011, instead of following the instructions given to him at the BP-9 level, the plaintiff attempted to file a Regional Administrative Remedy Appeal (BP-10) with the Southeast Regional Director (Roy Lathrop decl. ¶ 9, attach. B, Remedy ID: 637135-R1). On June 3, 2011, the plaintiff's BP-10 was rejected and returned to him. He was instructed

that he needed to follow the instruction given at the institution level and exhaust at that level prior to filing his appeal with the Regional Office (pl. resp. m.s.j., ex. 0011).

On July 5, 2011, instead of following the instructions given to him at the BP-10 level, the plaintiff attempted to file a Central Office Administrative Remedy Appeal (BP-11) with the BOP General Counsel's Office (Roy Lathrop decl. ¶ 10, attach. B, Remedy ID: 637135-A1). On August 31, 2011, the plaintiff's BP-11 was rejected and returned to him. He was instructed that he needed to follow the instruction given at the institution and region levels and properly exhaust at those levels prior to filing his appeal with the General Counsel (pl. resp. m.s.j., ex. 0014).

As set forth above, the plaintiff has not properly submitted a grievance at all levels of agency review; thus, he has failed to exhaust his administrative remedies. While the Fourth Circuit Court of Appeals has recognized that an administrative remedy is not considered to have been available if a prisoner "through no fault of his own, was prevented from availing himself of it," that is not the case here. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). The plaintiff's submission at the institution level was rejected due to his own actions, not the actions of the BOP. Instead of correcting his deficiency and resubmitting his grievance to the institution in proper form, he chose to ignore the direction given to him and proceeded to the next two levels (Regional, General Counsel). His grievance was properly rejected at those levels for not following proper procedures as well. Remedies were available, but the plaintiff simply chose not to avail himself of them. "[A] prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are." *Id.* If the prisoner himself were at fault for not exhausting, then the case would be over. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). "[T]o be entitled to bring suit in federal court, a prisoner must have utilized all available remedies in accordance with the applicable procedural rules, so that

9

prison officials have been given an opportunity to address the claims administratively." *Moore*, 517 F.3d at 725 (internal quotations omitted).

In his opposition to the defendant's motion (pl. resp. m.s.j. 4-10), the plaintiff attempts to lay the blame for his failure to exhaust administrative remedies on the Government. His excuse is that he disagreed with the reasons for the rejections of certain remedies, and therefore the court should find he exhausted his remedies. As argued by the defendant, mere disagreement with the reasons for rejection is not a valid excuse for failing to exhaust administrative remedies. The plaintiff was given several opportunities to correct his deficiencies and to resubmit his grievances in proper form, but he chose not to do so and instead proceeded to the next level of review. The plaintiff's excuse bolsters and affirms the defendant's assertion that remedies were available to the plaintiff and he chose not to avail himself of them. Accordingly, the plaintiff failed to exhaust his administrative remedies, and his case should be dismissed for failure to do so.

***Merits***

The plaintiff's allegations also fail on the merits. The plaintiff first alleges that defendant Clark racially discriminated against him (comp. at 6). Specifically, the plaintiff claims defendant Clark singled him out and had only him placed in administrative detention because he is Mexican (*id.* at 6-7). The plaintiff further claims defendant Clark intentionally took the actions he did because Clark has a problem with him and does not like him (*id.* at 7).

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). If this showing is

made, the court then "proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* (citing *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 471 (4th Cir. 1999); *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818-19 (4th Cir. 1995)).

The evidence before this court is that it was not defendant Clark's decision to have the plaintiff placed in administrative detention, but it was in fact a decision made by the SIS, Mr. Santiago (Santiago decl. ¶ 3; Clark decl. ¶ 6). The plaintiff's claim that defendant Clark had a problem with him and did not like him is a conclusory statement unsupported by any evidence or fact. Defendant Clark testified that he has never had favorable or unfavorable dealings with the plaintiff and never displayed any dislike toward him (Clark decl. ¶ 7). Even if defendant Clark was mistaken in his identification of the plaintiff as the perpetrator, the plaintiff has not shown that the mistake was based on any improper motive. Furthermore, contrary to the plaintiff's claim, he was not the only individual placed in administrative detention as a result of the disturbance (Santiago decl. ¶¶ 3 & 5; Clark decl. ¶ 8). On November 5, 2010, the day the plaintiff was placed in administrative detention, an additional 11 inmates (Black and Hispanic) were also placed in administrative detention as a result of the disturbance (Santiago decl. ¶ 3). During the course of the investigation into this incident a total of 51 inmates (Black, Hispanic, and White) had at one time or another been placed in administrative detention (*id.* ¶ 5). Based upon the foregoing, the plaintiff has failed to state a valid claim of an Equal Protection violation against defendant Clark.

The plaintiff next claims that his right to due process was violated because he was not allowed to see the evidence used to charge him, the incident report was false, and he was not timely served with a copy of the incident report (comp. at 7). Prisoners are entitled to certain procedural protections in disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 564-65 (1974). The minimum required protections are: "(1)

11

advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985).

The plaintiff was provided with all of the due process that is required in relation to this incident. He was provided with written notice of the charge, the opportunity to call witnesses and present documentary evidence in his defense, and a written statement of the reasons for disciplinary action (Sandra Lathrop ¶¶ 8-11). Contrary to his claim, his right to due process was not violated when he was not permitted an opportunity to review the video tape. First, defendant Clark does not recall the plaintiff even making such a request (Clark decl. ¶ 5). However, assuming *arguendo* he had made such a request, refusal to permit an inmate to view videotape footage of an incident does not violate due process where the inmate was provided with a written report detailing the substance of the video, and the inmate had the opportunity to refute the written report. *See Davis v. J.C. Zuercher*, C.A. No. 7:08-cv-207-KKC, 2009 WL 585807, at *7-8 (E.D. Ky. March 6, 2009) (finding claim that inmate or his representative should have been allowed to view videotape of event leading to incident report lacked merit and further finding that disciplinary proceeding complied with requirements established in *Wolff*). The incident report clearly detailed what was observed on the video footage (Clark decl., attach. A). The plaintiff was given more than sufficient opportunity to refute this evidence during the UDC and DHO hearings, and, ultimately, the DHO determined the evidence did not support the charge and expunged the incident report. Based upon the foregoing, this claim fails.

Moreover, the plaintiff's claims regarding the incident report being false and not provided to him in a timely manner are equally meritless. There is simply no evidence the incident report was false. The incident report was not expunged because there was a

question as to whether or not the information contained within the incident report was accurate. The incident report was expunged because the DHO decided, in her professional judgment, that because the victims of the alleged assault by the plaintiff were not identifiable, the plaintiff's opportunity to prepare a proper defense would be hindered (Sandra Lathrop decl. ¶¶ 11-12]. Defendant Clark was not able to positively identify the victims because they were running and their faces were not clearly visible on the camera (Clark decl. ¶ 4).

As to the plaintiff's claim regarding untimely notice, BOP regulations in 2010 provided:

> Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident.

28 C.F.R. § 541.15(a) (2010). In this case, even though the plaintiff had been suspected of being involved in the disturbance and was placed in administrative detention on November 5, 2010, he was not positively identified as being involved until review of the video footage on December 17, 2010. A copy of the incident report was delivered to the plaintiff on December 20, 2010 (comp. at 4). As argued by the defendant, the plain language of this provision indicates that this time limit is not mandatory. Even though there was a brief delay in providing the plaintiff with a copy of the incident report, he has not alleged that this brief delay in any way prejudiced or hindered his ability to defend himself against the charge. Based on the foregoing, this claim fails.

The plaintiff also appears to allege that his constitutional rights were violated by his placement in administrative detention. As discussed above, there is no evidence that it was defendant Clark's decision to place the plaintiff in administrative detention. Furthermore, the Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody

13

status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... And is not otherwise violative of the Constitution." *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir.1994) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). *See also Sandin v. Connor*, 515 U.S. 472, 484 (1995) (holding liberty interests for prisoners are "limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"). Thus, in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 483-84.

Under *Sandin*, the Fourth Circuit has held that confinement to administrative detention does not exceed the sentence imposed in such an extreme way as to give rise to the protection of the Due Process Clause by its own force. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). Likewise, placement in administrative detention does not create an atypical or significant hardship in relation to the ordinary incidents of prison life. *Id.* at 503-04; *Ajaj v. United States*, 479 F.Supp.2d 501, 543-44 (D.S.C. 2007). The placement of the plaintiff in administrative detention for an investigation into his involvement with an institution disturbance is not a condition that exceeds the sentence imposed upon him and did not create an atypical or significant hardship in relation to the ordinary incidents of prison life. Accordingly, this claim fails.

Lastly, the plaintiff claims that he was subjected to cruel and unusual punishment because he was kept in administrative detention for something that could not be proven he did, because he is Mexican, and because defendant Clark had issues with him (comp. at 7-8). He also claims he was treated with deliberate indifference because he was

14

the only one charged with and placed in administrative detention for something that had not been proven to happen (*id.* at 8).

As a general matter, the Eighth Amendment prohibits punishments which "'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a sufficiently serious deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991).

As discussed above, the defendant has presented evidence that the plaintiff's placement in administrative detention was not defendant Clark's decision, was not based on a false incident report, and was not due to his race. The evidence further shows that the plaintiff was not the only person placed in administrative detention as a result of the incident. The plaintiff has failed to establish an issue of material fact as to either element of an Eighth Amendment violation, and thus this claim fails.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the defendant's motion for summary judgment (doc. 21) be granted. Should the district court adopt this court's recommendation, the defendant's motion to strike the plaintiff's opposition to the dispositive motion (doc. 32) will be rendered moot.

s/ Kevin F. McDonald  
United States Magistrate Judge

August 1, 2012  
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.